## Huse *vs.* Brown, *Ex'r.*

The question whether a physician's charges accrued for services rendered in the *last sickness* of the deceased, within the meaning of *Stat.* 1821, *ch.* 51, *sec.* 25, is to be decided by the jury.

And it seems that the sickness, however long its duration, which terminated in the death of the patient, is within the meaning of this statute ; though the same language employed in the *Stat.* 1821, *ch.* 38, *sec.* 3, respecting nuncupative wills may require a more restricted interpretation.

This action, which was for medicines and medical services, was brought within one year after the decease of the testator, on the ground that, being for the expenses of his last sickness, the demand was within the exception in the statute which exempts the executor or administrator from the costs of any suit commenced within a year from the date of his official bond. Within the year the defendant tendered the amount of the debt, without costs, under *Stat.* 1821, *ch.* 52, *sec.* 18 *;* which being pleaded in bar, the plaintiff replied that the bill was for the expenses of the testator's last sickness; on which fact issue was taken. The bill accrued between *Jan.* 19th, and *June* 28th, 1828, inclusive ; and the patient died *Dec.* 16th, in the same year, of a cancer in the nose ; which had existed about two years, and had been regarded as a fatal disease as early as in *April* preceding. He was six sixty years old ; and had bestowed some personal attention to the business of his farm during the summer of 1828, and was occasionally abroad in the autumn following.

*Perham J.* before whom the cause was tried in the court below, ruled that the words " last sickness," in the statute respecting nuncupative wills, being used for a different purpose from those in the statute relating to suits against the executor, had no bearing on the present question; and he instructed the jury that if they were satisfied that the testator died of the disease for which the plaintiff prescribed, and that it continued till his death, they ought to find for the plaintiff; which they accordingly did. And the defendant filed exceptions.

*C. R. Porter,* for the defendant, argued that the terms " last sickness" were to be applied, in chronic and long protracted complaints, only to the last alarming and probably fatal changes in the character of the disease ; agreeably to the construction given in *New-York* to the law respecting nuncupative wills. And he contended that this rule was sufficiently liberal to secure to the patient the common offices of humanity, which was the sole object of the statute.

*J. Thayer,* for the plaintiff.

The opinion of the Court was read in the ensuing *September* term in *York,* as drawn up by

MELLEN C. J. Though the present action was commenced within one year next after the defendant assumed the trust of executor, and though he made a tender of the amount of the demand sued and brought the same into court for the plaintiff within said year, still by the terms of the *Stat.* 1821, *ch.* 52, *sec.* 18, the action was properly commenced and the tender and deposit of the money in court were no bar to the action, if the demand was such as would not be affected by the insolvency of the estate of the testator. Our enquiry then is, whether the demand is of that character.

In the *Stat,* 1821, *ch.* 51, *sec.* 25, it is provided " that when the estate of any person deceased shall be insolvent or insufficient to pay all just debts which the deceased owed, the same shall be distributed to, and among all the creditors in proportion to the sums to them respectively due and owing, saving that debts due for taxes and debts due to the State, and for the last sickness and necessary funeral expenses of the deceased are to be first paid." Viewing the facts of the case as presented on the exceptions, the enquiry is whether the verdict ought to be set aside on account of any alleged incorrectness in the instructions given by the Court of Common Pleas to the jury. As to the second instruction relating to the provision in our *Stat.* 1821, *ch.* 38, *sec.* 3, we consider it as perfectly correct. The words " last sickness," as there used, cannot be understood as explanatory of the same words as employed in the pas-

sage above quoted. We do not know that their construction has ever been settled by any judicial decision. The object which the legislature had in view, doubtless was, that a sick man, though possessed of but very little property, should be in no danger of suffering by reason of the want of medical advice and assistance, even where unfeeling physicians, if there are any such, would be tempted to refuse or withdraw their professional attentions, apprehending they might lose their reward.

The nature of the disorder and its progress are particularly described in the exceptions, and the court instructed the jury that they would decide whether the testator died of the cancer under which he was laboring, when the plaintiff attended upon him; and whether it was a continuing complaint or disorder until his death; and if they should decide those questions in the affirmative, they might consider it his last sickness. And why might they not, whether any such instruction had been given to them or not? It would seem, to a plain understanding, to be an indisputable fact, that the sickness which is terminated by the death of a patient, is his last sickness.—— All taxes and debts due the State are to be paid before other debts, however long a time they may have been due; no limitation is here imposed; nor is there any as to the length of time which the last sickness of a man may have continued prior to his death; and how can the court impose a limitation in the latter case with more reason than in either of the former? Sickness assumes so many forms and death approaches in so many different ways, that we know not how to lay down any legal principle in such cases, that can be applied by way of construction of the words " last sickness." What is to be considered a man's last sickness, seems to be a question properly determinable by the jury upon the facts in each case, which can seldom, if ever, be the same in two instances. There may probably be, in a multitude of cases, a strong resemblance. On a trial for homicide, it is always a question for the jury, whether the deceased died a natural death, or in consequence of the act of the person accused. So it may be a question whether the sickness, of which a person dies, is the same under which he labored, when confined and receiving medical aid one or two months before. In the case before

us, the question as to the cause of the testator's death, and the continuance of his sickness, have been settled by the jury, whose business it seems to have been to settle it, as much as to determine, in a case of lunacy, whether a certain act was done in a lucid interval, or under the influence of a continuing, mental disability.

We perceive no ground for sustaining the exceptions.

*Judgment on the Verdict.*